**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **JOHN HURT** | § | |
| | § | |
| **V.** | § | **Civil Action No. 4:25-CV-1117-RWS-JBB** |
| | § | |
| **ESSENTIAL RESOURCES GROUP INC. d/b/a ESSENTIAL SCREENS, ET AL.** | § | |
| | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**[1]

Before the Court are Plaintiff's Updated Motion for Partial Summary Judgment or, in the Alternative, Rule 56(g) Findings (Dkt. No. 100) and Defendants' Motion for Summary Judgment (Dkt. No. 111). Having reviewed the relevant briefing and hearing arguments on September 1, 2026, the undersigned recommends Plaintiff's motion be **DENIED**, Defendants' motion be **GRANTED**, and Plaintiff's above case be **DISMISSED WITH PREJUDICE**.

## I. BACKGROUND

Plaintiff John Hurt, proceeding *pro se*, asserts claims against Essential Resources Group, Inc. d/b/a Essential Screens ("ERG"), ERG President Travis Powell ("Powell"), and ERG Employee Erin Taylor ("Taylor") ("Defendants"). Plaintiff asserts claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. and Texas state-law claims, alleging ERG improperly included a criminal conviction for harassment in an employment background screening report prepared for a prospective employer, Texas Capital Bank ("TCB"), after which TCB rescinded Plaintiff's offer of employment following communications with Defendants.

[1] The above case was referred to the undersigned United States Magistrate Judge for pretrial purposes in accordance with 28 U.S.C. § 636.

In Count I, Plaintiff alleges ERG violated 15 U.S.C. § 1681e(b) by reporting the harassment conviction to TCB even though ERG had received information during the review process indicating that no reportable criminal records had been identified. Dkt. No. 50, ¶¶ 33, 66-70. In Count II, Plaintiff alleges ERG's reinvestigation of Plaintiff's dispute was not reasonable and thus violated 15 U.S.C. § 1681i. Specifically, Plaintiff alleges ERG's reinvestigation "largely recycled flawed sources rather than verifying with official court records and reconciling" information Plaintiff supplied regarding his appeal of the harassment conviction. *Id.*, ¶¶ 55-56, 71-75. In Count III, Plaintiff alleges ERG violated 15 U.S.C. § 1681k(a)(1) by failing to provide Plaintiff with contemporaneous notice when ERG furnished the initial report to TCB. *Id.*, ¶¶ 24 (alleging the first time Plaintiff could review the report was after TCB had already received and relied on it to his detriment), 31 (alleging Defendants communicated adverse and potentially disqualifying information to TCB before Plaintiff had any opportunity to review or respond to the report), 76-79. Plaintiff's remaining counts allege defamation (malice/reckless disregard) against all Defendants (Count IV, ¶¶ 80-86); tortious interference with prospective business relationship against ERG and Taylor (Count V, ¶¶ 87-90); negligence and gross negligence against ERG (Count VI, ¶¶ 91-94); declaratory and equitable relief against all Defendants (Count VII, ¶¶ 95-97); and willfulness/punitive damages (Count IX, ¶¶ 98-101).

Following an extended discovery period, both sides filed summary judgment motions.

## II. LEGAL STANDARDS

### A. Summary Judgment

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show]

that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex*, 477 U.S. at 323. To meet its burden, the moving party must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Anderson*, 477 U.S. at 248-49).

The court must consider all the evidence but must refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). All facts and inferences drawn from those facts must be viewed in the light favorable to the party resisting the motion for summary judgment. *Scott v. Harris*, 550 U.S.

372, 378 (2007). "The court need consider only the cited materials, but it may consider other materials in the record." *Mission Pharmacal Co. v. Virtus Pharm., LLC*, 23 F. Supp. 3d 748, 756-57 (W.D. Tex. 2014) (quoting FED. R. CIV. P. 56(c)(3)).

**B. Fair Credit Reporting Act**

The Fair Credit Reporting Act ("FCRA") was "enacted ... to ensure fair and accurate credit reporting that protects consumers while meeting the needs of commerce. To that end, the Act imposes several obligations on [credit reporting agencies ('CRAs')] and authorizes consumers to bring a private cause of action in response to negligent or willful violations." *Hammer v. Equifax Info. Servs., L.L.C.*, 974 F.3d 564, 567 (5th Cir. 2020) (quoting *St. Paul Guardian Ins. Co. v. Johnson*, 884 F.2d 881, 883 (5th Cir. 1989)). The FCRA "does not impose strict liability for inaccurate entries. Rather, the plaintiff must show that the inaccuracy resulted from a negligent or willful failure to use reasonable procedures when the report was prepared." *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 896 (5th Cir. 1998) (citation omitted).

This case concerns three provisions of the FRCA. First, 15 U.S.C. § 1681e(b) requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." The adequacy of agency procedures is what a reasonably prudent person would do under the circumstances. *Thompson v. San Antonio Retail Merchants Assoc.*, 682 F.2d 509, 513 (5th Cir. 1982) (citation omitted). "[W]hile the determination of whether a procedure is reasonable is a question for a jury in most cases, if the reasonableness of the procedure is beyond question, summary judgment is appropriate." *Fraase v. Bureau*, No. 3:23-CV-117, 2025 WL 947546, at *4 (D.N.D. Mar. 28, 2025), *aff'd sub nom.*, 179 F.4th 654 (8th Cir. 2026) (citation omitted).

Second, 15 U.S.C. § 1681i governs the requirements a consumer reporting agency must meet when a consumer disputes the accuracy of the information in their credit file. *Lopez v. Experian Info. Sols., Inc.*, No. 4:25-CV-646, 2026 WL 1696651, at *4 (E.D. Tex. June 11, 2026). Section 1681i provides that, upon receiving notice that a consumer disputes "the completeness or accuracy of any item of information" in her file, the consumer reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate." *Reyes v. Equifax Info. Servs., L.L.C.*, 140 F.4th 279, 285 (5th Cir. 2025) (quoting 15 U.S.C. § 1681i(a)(1)(A)). In conducting its reinvestigation, the agency must "review and consider all relevant information submitted by the consumer" regarding the disputed information. *Id.* (quoting § 1681i(a)(4)). Within 30 days of notice of the dispute, the consumer reporting agency must either record the current status of the disputed information in the consumer's file, or delete or modify the disputed item of information if it is "inaccurate or incomplete or cannot be verified." *Id.* (quoting § 1681i(a)(1)(A), (5)(A)).

To ultimately "establish a violation of either § 1681i(a) or § 1681e(b), the consumer must present evidence tending to show that the agency prepared a report containing inaccurate information." *Morrell v. Experian Info. Sols., Inc.*, No. 3:25-CV-1466-L-BN, 2026 WL 1378596, at *3 (N.D. Tex. Apr. 30, 2026), *report and recommendation adopted*, 2026 WL 1701016 (N.D. Tex. June 11, 2026) (citations omitted).

Third, 15 U.S.C. § 1681k applies to a CRA "which furnishes a consumer report for employment purposes" containing items of information which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment. 15 U.S.C. § 1681k(a). Section 1681k(a)(1) provides a CRA, "at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record

information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported." 15 U.S.C. § 1681k(a)(1). Alternatively, under § 1681k(a)(2), a CRA may "maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date." 15 U.S.C. § 1681k(a)(2) ("For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.").

**III. SUMMARY JUDGMENT EVIDENCE**

On July 16, 2025, Patrick Ryszkiewicz (Talent Acquisition Partner with TCB) emailed Hurt regarding the "possibility of having [Plaintiff] join Texas Capital Bank." Dkt. No. 50-1 at 2; *see also id.* at 3 (July 17, 2025 "Offer Acceptance Received-Texas Capital Bank-Next Steps," noting that once the third-party background screening check cleared, TCB would reach out to confirm Hurt's start date and communicate next steps).

TCB retained ERG as the screening company to provide the employment screening report. Declaration of Erin Taylor, "Taylor Decl." (Dkt. No. 112-2), ¶ 5. ERG conducted a national criminal database search of Hurt, which generated a potential record match for someone with his full name and date of birth in New Mexico. *Id.*, ¶ 11. Based on Hurt's residence history, developed through a social security number trace, ERG ordered a county-level search of his criminal history in Bernalillo County, NM from an outside research vendor, Affirm Background Screening ("Affirm"). *Id.*, ¶ 12.

Affirm performed a search for criminal history information pertaining to John Leslie Hurt via New Mexico's online court records database. Declaration of Chad Weber, Chief Executive

Officer of Affirm, "Weber Decl." (Dkt. No. 100-1), ¶¶ 2, 5 (stating this is the only source that Affirm used to perform a records search related to ERG's July 18 order). Affirm's search result informed ERG that there were "no reportable records" found. *Id.*, ¶ 6; *see also* Taylor Decl., ¶ 13 (stating Affirm "reported that it did not find any records concerning Plaintiff in New Mexico").

As Affirm's findings were in tension with those of the national criminal database search, on July 22, 2025, Defendant Taylor—the Director of Client Experiences at ERG who participated in the investigation and reinvestigation of Hurt's employment screening report—conducted her own criminal history search using the New Mexico Courts Case Lookup website, using Hurt's name and date of birth. Taylor Decl., ¶¶ 1-2, 14. Taylor acted "pursuant to ERG's procedures directing employees to access the County Criminal Search" as set forth in Dkt. No. 112-2 at ES-333. *Id*, ¶ 14. Taylor's search identified a Bernalillo County case reflecting a September 2016 conviction for harassment ("Harassment Conviction"). *Id.*, ¶ 15; *see also* Dkt. No. 111-6 at ES-70 to ES-74 (docket from that case, reflecting conviction and appeal). As TCB had requested a criminal search covering the past ten years, and as the Harassment Conviction fell within that period, Taylor manually entered the case information regarding the Harassment Conviction into ERG's platform to be included in Hurt's employment screening report. Taylor Decl., ¶ 16; *see also* Dkt. No. 120-6 at 13 (ERG admits—in response to Plaintiff's Request for Admission ("RFA") 22—that it "reviewed the court records from the source – the Court – prior to issuing the initial screening report to TCB").

On July 22, 2025, "sometime around noon," Taylor provided the Report to TCB for the first time. Taylor Decl., ¶ 17; *see also* Dkt. No. 120-6 at 21 (Defendants' response to Plaintiff's Interrogatory No. 7). On July 22, 2025, at 12:49 p.m., Taylor contacted Hurt via email, informing him that she was conducting a background check of him on behalf of TCB. Taylor Decl., ¶ 18.

Taylor asked if he could provide any additional details regarding the "harassment case from 2014 in New Mexico," noting TCB "always requests any additional information that can be provided in order to make an accurate assessment." *Id.*; *see also* Dkt. No. 111-7 at ES-167 (email exchange between Taylor and Hurt occurring on July 22, 2025 to July 23, 2025). TCB provided the Report to Hurt on July 22 or July 23. Dkt. No. 120-6 at 21 (Defendants' response to Plaintiff's Interrogatory No. 7).

Hurt responded to Taylor's email within hours, explaining that he had been "convicted of the misdemeanor harassment charge in September 2016" but had filed a timely appeal for a de novo trial, which he claimed erased his conviction. Taylor Decl., ¶ 19. Hurt provided a detailed response, explaining the factual background to the underlying charges, the case's procedural history, his filing of an appeal, his explanation of the effect of that appeal, and the New Mexico District Court's error in opening the appeal on the wrong charge:

> In 2014, I was charged with misdemeanor harassment and a related stalking charge in Bernalillo County, New Mexico in retaliation for trying to get the County to file charges against the man who had raped my wife. The stalking charge was formally dismissed by the court in March 2016 after I pointed out . . . to them it was illegal in New Mexico (as elsewhere) to charge both "crimes" at the same time. You can see the dismissal on the attached docket sheet. I was later convicted of the misdemeanor harassment charge in September 2016.
>
> At the time of trial, I was undergoing intensive chemotherapy for cancer, which severely impacted my ability to participate in the legal process. I was unable to assist counsel, respond adequately, or present a defense. There is, in fact a note on the docket for 8/5/15 related to a surgery that I had at that time. As a result, I filed a timely appeal for a de novo trial in district court to ensure due process. The de novo process essentially wipes the case away as though it never occurred. At this point there is not formal conviction and no ongoing prosecution.
>
> When the case was transferred – following my cancer treatments – to the District Court, the Court Clerk in 2017 two things occurred: (1) I was ordered to undergo a health examination due to my recent illness and (2) The court clerk made an error and moved forward the stalking charge that had been dismissed rather than then harassment charge that was to be reviewed. As a result, the statute of limitations

> expired and even had I been guilty (which I was not) they could not retry me. At this point there is not formal conviction and no ongoing prosecution.
>
> No further court action has occurred. I recently learned of the clerical error during transfer in which the district court docket incorrectly lists the case as "stalking," even though that charge was dismissed and never resulted in a conviction. As you can see from the attached, I am currently engaged in legal action with Bernalillo County and other entities regarding this whole fiasco.
>
> Importantly, the case has remained inactive for nearly a decade, well beyond the statute of limitations for retrial or prosecution of a misdemeanor under New Mexico law. I have not been convicted of stalking, and there is no active prosecution or legal proceeding pending against me.
>
> 1.)The incident occurred 11 years ago and would not have occurred except for the fact that my wife was raped and the individual who raped her created a smoke screen to cover his actions.
> 2.)There is no final conviction and the case cannot legally be pursued against me at any time in the future.
> 3.)This was an unfortunate case of a Texas executive trying to fight the New Mexico legal system, a system that made several egregious errors, some of which are discussed in the attached documents.
> 4.)My attorney and I are presently waiting for the 30 day notice period to expire to allow us to file suit against several N.M. entities responsible for this nightmare.
>
> I can provide additional information if necessary, but the key to everything is the note on the docket from 2016 that says "dismissed."
>
> Thank you for the opportunity to explain this. This is the first background check I've ever been required to do so. As you can appreciate, this would be very embarrassing if I had done what they said, and is even more so because I did not.

Dkt. No. 111-7 at ES-166 to ES-167.

The same day, Taylor responded, stating she "gave TCB very limited information about your harassment case but they would like more." *Id.* at ES-165. Taylor asked if Hurt could provide more information about the harassment case itself, noting "they are just looking for a statement from you regarding the circumstances of that case." *Id.*; Taylor Decl., ¶ 20.

Hurt responded approximately an hour later with a "note from [his] attorney." Taylor Decl., ¶ 21; Dkt. No. 111-7 at ES-164. "Key Observations" from the attorney were that the original

harassment conviction from Metropolitan Court appeared to have been appealed de novo to the District Court in January 2016, but there is no entry in the District Court docket stating that the appeal conviction was heard or denied. Dkt. No. 111-7 at ES-164. "Instead, the harassment case seems to vanish from the docket as the stalking charge [which had been dismissed earlier] takes its place." *Id.* The attorney note stated that if Hurt's appeal was de novo as Hurt said, the District Court is required to retry that case anew, and that "[i]f that never occurred, it raises serious due process concerns." *Id.* Under "What This Suggests," Hurt stated that according to his attorney, "[i]f the de novo appeal was never held and never formally denied, the original harassment conviction should have no legal effect, as it was stayed pending appeal." *Id.* (further stating there is no document or notation showing that Hurt's appeal was ruled upon, denied, dismissed, or abandoned); Taylor Decl., ¶ 22.

Hurt emailed again that evening, stating the New Mexico District Court "messed up during the changeover [transfer from the on-record appeal docket to the trial de novo appeal docket] and as a result [he] cannot be charged now or any time for stalking (it was dismissed in March 2016) and the harassment charge must be vacated." Dkt. No. 111-7 at ES-163 (stating "I have no conviction and will not have.").

According to Taylor's declaration, because Hurt did not offer any evidence that the Harassment Conviction had been vacated or otherwise set aside, she included the Harassment Conviction in his employment screening report. Taylor Decl., ¶ 23 (citing Dkt. No. 111-8, copy of Report issued sometime on July 22, 2025). However, this is somewhat inconsistent to Defendants' responses to Plaintiff's RFAs, where Defendants admit "they did not contact the Plaintiff before furnishing the report." Dkt. No. 120-6 at 11 (Defendants' response to RFA 15); *see also id*. at 12

(Defendants' response to RFA 19 also explaining the initial report was sent to TCB before talking to Hurt).

Nevertheless, after Hurt disputed the Harassment Conviction, Taylor notified TCB of the dispute and placed the Harassment Conviction under review so that TCB would hold the position Hurt sought open until ERG was able to verify the report. Taylor Decl., ¶ 24. On the afternoon of July 22, Taylor emailed Ryszkiewicz and Andrea De Belle at TCB as follows:

> This file was just set to "Review" status due to a Harassment conviction from 2016. John [Hurt] did email me about this case and said that he was charged "in retaliation for trying to get the County to file the charges against the man who had raped my wife." He also had a bit to say about the NM justice system, but that is a separate issue (lol).
>
> His record is otherwise clean. Does the explanation above suffice or do you need additional information?

Dkt. No. 50-1 at 11. Shortly thereafter, De Belle emailed Taylor as follows:

> Removed Patrick.
>
> Please send me any additional details directly to me so I can properly adjudicate this one. If this is all you have from him, then I will review the report now. I would think we would want more justification from him than just the sentence below. I would think a conviction for harassment is something that he might have a full written explanation about. Can you obtain that from him?

*Id.*

That same afternoon, Taylor replied as follows:

> I just talked to him on the phone. He said that it was in relation to a man that had raped his wife back in high school. He & his wife were living in TX but they drove to NM where it happened long ago, and tried to file a police report, but the police wouldn't take a report (possibly a statute of limitations issue). Then John and his wife reached out to the man directly to ask him to "do the right thing" (he did not specify what that meant) – I am not sure what was said but the man filed harassment charges against them. They were actually back in Texas when that all happened and John didn't know about it until he was pulled over and they said he had a warrant.
>
> Also, John [Hurt] said he would be happy to call and discuss with you if you would like.

*Id*. at 10. The following morning, De Belle emailed Taylor as follows:

> Last question – can you ask him if this is closed? There is not a disposition on it – Did he receive a fine? Spend any time in jail? In New Mexico this offense could carry up to a $1000 fine and/or up to 364 days in jail so I am curious if it is considered closed and just not on the report since it is from 2016.

*Id.*

Later that morning, Taylor responded via email as follows:

> The case is definitely closed, it just didn't have any sentencing information listed. He did not spend any time in jail, but I didn't ask about a fine. I'll shoot him an email.

*Id.*

On July 23, 2025 at 11:23 a.m., Taylor emailed Hurt and asked whether he had to pay a fine. Dkt. No. 111-7 at ES-162. He responded an hour later, stating as follows:

> Just off the phone with the presiding judge regarding vacating the original complaint – it was wiped away when we appealed – and correcting the record. There was not and could **NOT be a** fine since the first court was not a court of final jurisdiction.

*Id*. (emphasis original).

Meanwhile, at 11:41 a.m., Taylor emailed De Belle and asked if she had a "few minutes to chat on the phone about" Hurt. Dkt. No. 120-7 at 20 (ES-202). De Belle responded that she had a "few minutes" before her next call at 2:30 if Taylor wanted to call her. *Id.*

On July 24, 2025, Hurt sent Taylor a formal dispute stating that the report was "incorrect," attaching a "Dispute and Notice of Legal Risk," and asking Defendants to "take appropriate action as soon as possible." Dkt. No. 50, ¶ 41. Taylor acknowledged receipt of the dispute the same morning, writing: "I received your notification of dispute." *Id*., ¶ 42. Taylor then emailed Defendant Powell (the President of ERG) and Dawn Hill: "I received a dispute from a candidate that I would like to discuss. Do you guys have time for a call today?" *Id*., ¶ 45.

Hill (Director of Operations with ERG) emailed Taylor and Powell and asked for an outline of the conversations with Hurt "with dates and times." Dkt. No. 120-7 at 15 (ES-188). Hill asked what triggered Hurt to state he was "disputing" the record. *Id.* Hill also stated: "Let's get this logged into our dispute tracking. I ordered an audit from Affirm." *Id.* at ES-189.

Also on the morning of July 24, 2025, Hill emailed Amber Westerlund and Chad Weber, the President/CEO of Affirm, with the Subject: John Hurt – Bernalillo NM. Dkt. No. 120-7 at 22 (ES-240). Hill asked if Affirm could "change this to a 10 year search." *Id*. (noting "[w]e are looking specifically for a harassment charge in 2016"). Shortly thereafter, Hill emailed Weber to note "there is an appeal to the case." *Id.* at 24 (ES-242); *see also* Dkt. No. 50-1 at 13. Later that afternoon, Hill emailed Weber as follows:

> I do have a feeling that this was not reportable due to some procedural statutes in appealed cases in NM. But I am not 100% confident in the information on the reports.

*Id.* at 27 (ES-245); *see also* Dkt. No. 50-1 at 12.

In her declaration, Taylor states she placed the investigation of the Harassment Conviction with Affirm for a second time. Taylor Decl., ¶ 25. Affirm was able to locate the criminal conviction but was unable to determine whether the Harassment Conviction was valid. *Id.*, ¶ 26.[2]

On July 24, 2025, at 9:25 a.m., Brad Dubbs, Compliance Assessment Manager at TCB, emailed Hurt to "touch base with you while all of the pre-hire activities are in the works." Dkt. No. 120-8 at 4 (asking whether Plaintiff had the desire/capability to start earlier than the 8/6 date "if the recruiting preliminaries can be wrapped up"). On July 30, 2025,

[2] After Hurt filed the present action, ERG obtained documents from the Bernalillo County Metropolitan Court confirming ERG's findings that Hurt had been found guilty of harassment and filed an appeal of his conviction. Taylor Decl., ¶ 29; *see* Dkt. No. 111-10. Meanwhile, Hurt has provided notice of a Public Records Response from the New Mexico Department of Public Safety dated January 29, 2026, which reports "no records exist" responsive to Hurt's request for any arrests, warrants, or convictions associated with the identified case numbers from 2014 through 2020. *See* Dkt. No. 21-1; Declaration of John Hurt, "Hurt Decl." (Dkt. No. 120-1), ¶ 9.

Hurt emailed Dubbs to check in regarding his onboarding. *Id.* at 6. Dubbs responded later that morning: "We just cannot get ready for you this week, so please plan on the original date." *Id*.

HR emails from TCB show internal discussions on July 31 and the morning of August 1 regarding the "ETA on John Hurt's background check." Dkt. No. 105-5 at 3. On August 1 at 10:11 a.m., an HR employee advised four TCB employees internally that "[t]here's probably a good chance he won't start on 8/6, but we'll let you know otherwise." Dkt. No. 105-5 at 1.

On August 1 at 5:52 p.m., Morgan Vickery (VP, Talent Acquisition Lead for TCB) emailed Hurt to notify him that "we have decided to go a different route and will not be moving forward with our original offer to you." Dkt. No. 50-1 at 5. On August 1, 2025 at 6:35 p.m., De Belle with TCB emailed Taylor as follows:

> We have decided to go in a different direction and will not be moving forward with this candidate. Please mark this as closed/cancel. We will not need any additional reports.

*Id*. at 6.

Acting out of an abundance of caution, Taylor decided to remove the criminal conviction from the Report because she could not definitively confirm the criminal conviction in light of the information provided by Hurt. Taylor Decl., ¶ 27. Therefore, on August 4, 2025, Taylor revised the Report to remove the Harassment Conviction and provided a revised copy of the report (the "Revised Report") to TCB. *Id*., ¶ 28; Dkt. No. 111-9.

De Belle, the Director of Human Resources Compliance at TCB at the time Hurt sought employment there, was responsible for reviewing the Report on behalf of TCB with TCB's in-house counsel. Dkt. No. 111-11 (De Belle Dep.) at 11:24-12:7; 24:14-25:9. During her deposition,[3]

[3] On June 30, 2026, Defendants' counsel appeared for the deposition of De Belle. After waiting approximately fifteen minutes, the deposition went forward without Plaintiff, as he did not to appear at the rescheduled deposition. On July 15, 2026, Plaintiff filed his "Rule-Compliant Motion to Compel Verified Discovery Certification, for Limited

De Belle testified that the Harassment Conviction in the Report did not have any impact on Hurt's employment with TCB. *Id*. at 26:15-23. While the reinvestigation of his contested criminal information in the original Report was ongoing, TCB made a decision to rescind Hurt's job offer. *Id.* at 35:5-11; *see also id.* at 38:5-7 (stating she did not review the Revised Report). As stated in De Belle's email, TCB had already decided to go in a different direction. *Id*. at 35:12-15.

According to De Belle's deposition testimony, the Report had no bearing on the decision to rescind Hurt's offer, and "there were reasons separate and distinct from the Essential Group's screening report that resulted in Texas Capital Bank's decision not to employ Mr. Hurt." De Belle Dep. at 35:16-23. Specifically, Plaintiff "was not representing himself in a very professional manner during the course of the background screening process." *Id*. at 35:24-36:15 (further stating the decision was based on a combination of Hurt's communications with the bank and ERG). De Belle testified that the way Hurt represented himself to TCB and ERG, "it's just not someone that we wanted to move forward with in hiring." *Id.* at 37:2-5. De Belle agreed with counsel's characterization of Hurt's behavior as "erratic and unprofessional." *Id.* at 38:8-14.

According to Hurt's declaration, the available evidence does not establish when TCB received or reviewed the Revised Report, whether TCB received any dispute-related material or correction before rescission, or the particular records and communications on which the recission decision was made. Declaration of John Hurt, "Hurt Decl." (Dkt. No. 120-1), ¶ 15. Hurt states that before this case began, he did not know who Andi De Belle was, and he had no direct

Depositions, and for Rule 56(d) Protection, seeking among other things leave to depose De Belle before Defendants could rely on her testimony in a dispositive motion. That aspect of Plaintiff's motion was denied on July 22, 2026. Dkt. No. 107 at 1. The undersigned explained that Plaintiff could make any desired relevant arguments in response to Defendants' motion for summary judgment. *Id.* at 2. Plaintiff has filed Rule 72(a) objections to the July 22 Order (Dkt. No. 115), which are currently pending before District Judge Schroeder.

communication with De Belle or with TCB "about the criminal report, my appeal, my dispute, or my alleged conduct during the screening process." *Id.*, ¶ 16.

## IV. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants argue they are entitled to summary judgment on all eight counts in Plaintiff's Second Amended Complaint. The undersigned agrees and accordingly recommends summary judgment be granted to Defendants. On this record, there is no genuine factual dispute regarding an inaccuracy in the Report; therefore, Plaintiff's § 1681e(b) (Count I) and §1681i (Count II) claims against ERG fail. This either directly or indirectly defeats the remaining counts as well; and those remaining counts fail for additional reasons addressed below.

### A. Plaintiff's claims under 15 U.S.C. § 1681e(b) (Count I against ERG) and § 1681i (Count II against ERG) fail because Plaintiff cannot meet the threshold requirement of identifying sufficient evidence to show the relevant information was inaccurate

The high level summary of the above record is that Plaintiff was charged with stalking and harassment in New Mexico in 2015-2016. The stalking charge was dismissed, but the county court convicted Plaintiff of harassment. Plaintiff filed an appeal under New Mexico law—that Plaintiff contends (and Defendants do not dispute) requires a de novo review and new trial. However, the appeal was mistakenly opened under the dismissed stalking count rather than the adjudicated harassment count. Regardless, Plaintiff apparently did not participate in the appeal and no one has been able to show any action taken by the appellate court—no ruling, hearings, affirmation, or dismissal of the Harassment Conviction. Plaintiff contends, without argument to the contrary from Defendants, that due to his de novo appeal—which the state did not timely pursue/conclude within the relevant limitations period—his Harassment Conviction is invalid and cannot be reinstated.

Thus, Plaintiff alleges ERG negligently violated § 1681e of the FCRA by reporting the Harassment Conviction without addressing the effect of his appeal (Count I), as well as § 1681i

by failing to reinvestigate his criminal record after he explained the appellate history (Count II). Dkt. No. 50, ¶¶ 66-75. Plaintiff argues ERG should not have reported the Harassment Conviction as a reportable record pursuant to New Mexico law, or it should have mentioned that Plaintiff had filed a de novo appeal of that conviction. As explained below, construing the record in the light most favorable to Plaintiff, these two counts must be dismissed because Plaintiff fails to meet the threshold requirement of demonstrating that ERG reported inaccurate information to TCB.

To prevail on claims under § 1681e and § 1681i of the FCRA, Plaintiffs must first demonstrate that the information was inaccurate. *Lopez*, 2026 WL 1696651, at *5 (citing *Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263, 267 n.3 (5th Cir. 2000) ("Courts applying § 1681e(b) uniformly limit recovery to cases where the failure to follow procedures causes actual harm (i.e., release of an *inaccurate* report) to the consumer." (emphasis added in *Lopez*)); also citing *Reyes v. Equifax Info. Servs., L.L.C.* ("*Reyes II*"), 140 F.4th 279, 286 (5th Cir. 2025) ("We join the other circuits in concluding that *inaccuracy* is a threshold requirement for § 1681i claims." (emphasis added in *Lopez*))). Generally, an item of information is "inaccurate" within the meaning of the FCRA "either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Reyes II*, 140 F.4th at 285 (quoting *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998) (citing *Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir. 1986))).

To start, the evidence of record does not create a genuine issue of material fact regarding whether the Harassment Conviction contained in the Report was "patently incorrect." Rather, the evidence shows the Report accurately reported that Plaintiff was convicted of the harassment charge.

Taylor obtained the conviction information directly from the New Mexico Courts Case lookup website. Taylor Decl., ¶¶ 14-16. Plaintiff does not argue this is patently incorrect information—Plaintiff acknowledges the county court did convict him of the harassment charge at issue in 2016. *Id.*, ¶ 19 (citing Dkt. No. 111-7 at ES-167 to ES-168). Further, all available evidence shows that the conviction is valid. After Plaintiff filed the present action, ERG obtained documents from the Bernalillo County Metropolitan Court confirming ERG's findings that Plaintiff had been found guilty of harassment, prior to filing an appeal of his conviction. *Id.*, ¶ 29 (citing Dkt. No. 111-10). ERG was not factually inaccurate to report Plaintiff's Harassment Conviction on the Report.

Rather, Plaintiff's arguments that the conviction is invalid, vacated, etc., hinge on his argument that the Report identifies the Harassment Conviction without addressing the effect his appeal had on the conviction. Dkt. No. 120 at 9 (Plaintiff arguing the Report treats the lower-court disposition as a final adverse conviction without accurately conveying the pending appeal and its legal effect.) That is better understood to be a claim that the Report was inaccurate because it is "misleading."

Plaintiff argues the incomplete de novo appeal was material procedural information that ERG was required to accurately account for when reporting Plaintiff's criminal status. *Id.* at 8; *see also id*. at 9 (arguing ERG should have conveyed the pending appeal and its legal effect). At the hearing, Plaintiff argued ERG should have either explained the appeal's effect on the Harassment Conviction in the Report or in subsequent communications to TCB.

Accepting Plaintiff's arguments would require ERG to interpret the legal effect of Plaintiff's appeal, which was apparently opened under the wrong charge and never concluded. ERG has no obligation. The requirement that CRAs must report accurate information extends only

to factual information, and does not require CRAs to perform legal analysis. Indeed, courts have rejected similar arguments in the debt reporting context. *Reyes v. Equifax Info. Servs., L.L.C.* ("*Reyes I*"), No. 4:21-CV-639-SDJ, 2024 WL 1308000, at *2 (E.D. Tex. Mar. 27, 2024), *aff'd sub nom.*, 140 F.4th 279 (5th Cir. 2025) (holding Reyes could not make the threshold showing that a report contains inaccurate information "if the alleged inaccuracy is based on a not-yet-adjudicated position that the debt is not legally valid" because "CRAs are not a tribunal sitting to resolve legal disputes"); *see also Clay v. Discover Bank*, No. 2:25-CV-179 JCM (NJK), 2025 WL 3079293, at *3 (D. Nev. Nov. 4, 2025) (rejecting the plaintiff's claims that the reported balance should be $0.00 rather than $898.00 because Discover submitted at 1099-C supposedly "cancelling" her debt, noting investigating the validity of this claim "would necessarily require a legal analysis by Trans Union, which is outside its purview"); *Denan v. Trans Union L.L.C.*, 959 F.3d 290, 295 (7th Cir. 2020) (noting that what the plaintiffs called "legally inaccurate" and "legally incorrect" information amounted to "non-adjudicated legal defenses to their debts" and further noting that one "might speculate that a loan is illegal, as plaintiffs do, but it would be just speculation" because "[o]nly a court can fully and finally resolve the legal question of a loan's validity").[4]

Similarly here, adopting Plaintiff's view would require a CRA to analyze "a not-yet-adjudicated position," *Reyes*, 2024 WL 1308000 at *2, and undertake a legal issue determination that it is "neither qualified nor obligated to resolve." *Denan*, 959 F.3d at 296; *see also Reyes v. Equifax Info. Servs., L.L.C.*, 140 F.4th 279, 287 (5th Cir. 2025) (citing *Denan* and other circuit cases which have found that credit reporting agencies are not tribunals and "are neither qualified nor obligated to resolve legal issues"); *see also Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264,

[4] The court noted that "If a court had ruled the [loans] invalid and Trans Union had continued to report it as a valid debt, *then* [plaintiffs] would have grounds for a potential FCRA claim." *Denan v. Trans Union L.L.C.*, 959 F.3d 290, 296 (7th Cir. 2020) (quoting *DeAndrade v. Trans Union L.L.C.*, 523 F.3d 61, 68 (1st Cir. 2008)).

270 (2d Cir. 2023) (stating an alleged inaccuracy reported by a CRA must first be "sufficiently objectively verifiable" to be actionable).[5] Given the unique and unclear procedural history of Plaintiff's Harassment Conviction, ERG cannot be found liable for failing to resolve the legal effect of Plaintiff's unfinished appeal.

Because Plaintiff has failed to make the threshold showing that the reported Harassment Conviction is factually inaccurate or misleading, his claims under § 1681e(b) (Count I) and § 1681i (Count II) fail, and the Court does not consider the reasonableness of ERG's procedures to assure maximum possible accuracy or the reasonableness of its reinvestigation of the Report.[6] Count II

---

[5] In *Mader*, the consumer alleged that Experian violated § 1681e(b) when it reported that Mader continued to carry debt for a private educational loan after he went through chapter 7 bankruptcy. *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 265 (2d Cir. 2023). Although Mader claimed the debt was not subject to the discharge exemption for education loans, the bankruptcy court's order had not stated whether the private educational loan was in fact discharged. *Id.* at 266-67. Whereas the district court assumed the kind of inaccuracy alleged by Mader was cognizable under the FCRA, *id.* at 268, the Seventh Circuit explained that the definition of "accuracy" from when the FCRA was enacted "requires a focus on objectively and readily verifiable information;" therefore, if an alleged inaccuracy "evades objective verification"—like inaccuracies that turn on legal disputes—it is not cognizable under the FCRA. *Id.* at 269–70. Because there was an unresolved legal question regarding the status of the post-bankruptcy validity of Mader's educational loan debt, the Second Circuit held Experian's reporting of the debt was not sufficiently objectively verifiable to render Mader's credit report "inaccurate" under the FCRA. *Id.* at 270.

[6] Assuming Plaintiff had sufficiently made the threshold showing, the undersigned further finds on this record that Plaintiff fails to raise a fact issue regarding the reasonableness of ERG's procedures to ensure the Report's accuracy. CRAs may rely on the accuracy of information obtained from a reputable source it reasonably believes to be trustworthy if the information appears plausible and credible on its face and the CRA lacks notice of any problems regarding the source. *Waters v. HireRight, L.L.C.*, No. 4:23-CV-06668-SAL, 2025 WL 4317687, at *2 (D.S.C. Sept. 16, 2025) (citation omitted) ("Requiring credit reporting agencies to look beyond the face of every court document to find the rare case when a document incorrectly reports the results of the underlying action would be unduly burdensome and inefficient in the absence of a consumer dispute."). Courts have considered court dockets a presumptively reliable source of information. *McCann v. CareerBuilding Emp. Screening, L.L.C.*, No. 2:18-CV-04105-MDH, 2018 WL 3978994, at *3 (W.D. Mo. Aug. 20, 2018) (citations omitted).

In verifying the Harassment Conviction, Taylor acted "pursuant to ERG's procedures directing employees to access the County Criminal Search as set forth" in Dkt. No. 112-2 at ES-333, which provides that "the County Criminal Search is considered the **most accurate** and comprehensive criminal background search." Taylor Decl., ¶ 14 (emphasis original). Plaintiff provides no evidence that any inaccuracy resulted from a negligent or willful failure to follow procedures. Nor has Plaintiff sufficiently demonstrated that ERG was unreasonable for not conducting any further investigation into his criminal history (*i.e.*, the impact an appeal has on a conviction under NM law) in preparing the Report. *McCann*, 2018 WL 3978994at *1, *4 (the plaintiff alleged that how the CRA reported his pending criminal charge created the appearance that he was a sexual predator, but the plaintiff did not cite to any authority asserting the FCRA imposes a duty to investigate a criminal charge beyond the contents of the online court docket and the text of the implicated criminal statute); *see also Swafford v. RentGrow, Inc.*, No. 24-CV-10509-PBS, 2026 WL 1786443, at *7 (D. Mass. June 22, 2026) (the plaintiff faulted RentGrow for not searching the Michigan Supreme Court's public

also fails because ERG, after it reinvestigation, removed the Harassment Conviction within the 30-day allowance prescribed by the statute.

In sum, there is no genuine dispute as to a material fact as to whether ERG negligently violated § 1681e(b), nor could a reasonable jury find a negligent failure to conduct a reasonable reinvestigation of Plaintiff's dispute. Accordingly, the undersigned recommends summary judgment be granted as to Counts I and II.

**B. Plaintiff's claim under 15 U.S.C. § 1681k(a) (Count III against ERG) fails because Plaintiff has not identified sufficient evidence to show ERG failed to maintain strict procedures designed to insure that the relevant information was complete and up to date under § 1681k(a)(2)**

Plaintiff's complaint focuses on ERG's alleged failure to comply with § 1681k(a)(1), which provides that a CRA can give the consumer notice "at the time such public information is reported" of "the fact that public record information is being reported ... together with the name and address of the person to whom such information is being reported." *Farmer v. Phillips Agency, Inc.*, 285 F.R.D. 688, 692 (N.D. Ga. 2012) (quoting § 1681k(a)(1)). ERG argues it complied with the "notice" provision of § 1681k(a)(1) because Taylor notified Plaintiff of the Harassment Conviction as a potentially adverse item of information in his consumer report via email on July 22, 2025, the same day it provided the Report to TCB. Dkt. No. 111 at 16 (citing Taylor Decl., ¶¶ 17-19; also citing Dkt. No. 111-7). However, Defendants fail to show the absence of a fact issue regarding

---

website for its decision reinstating the dismissal of his charges, but the court held no reasonable jury could conclude that RentGrow failed to follow reasonable procedures to assure maximum possible accuracy when it confirmed the convictions in two databases). The evidence demonstrates that ERG did employ reasonable procedures in assessing the accuracy of the conviction, and Plaintiff has not raised a material fact question as to this element of his § 1681e(b) claim. The focus of Plaintiff's claims rest on the assertion that Defendants did not reasonably investigate the effect his unfinished and mistakenly docketed appeal—questions that are not answered on the face of the docket itself.

Similarly, the evidence shows ERG performed a reasonable reinvestigation and thereafter deleted the disputed item upon finding that the information could not verify the appeal's status or effect, and Plaintiff has not raised a material fact question as to this element of his § 1681i claim.

whether ERG provided Plaintiff with notice of the Harassment Conviction's inclusion in the Report "at the time" such information was reported.[7]

This does not end the inquiry because—as an alternative to § 1681k(a)(1)—an agency may "maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date" under § 1681k(a)(2). In other words, § 1681k(a) provides that a consumer reporting agency that satisfies the threshold definitional requirements set forth above may comply with that section by providing notice to consumers under § 1681k(a)(1), or it may "maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date" under § 1681k(a)(2). *Henderson v. Corelogic Nat'l Background Data, L.L.C.*, 178 F. Supp. 3d 320, 333 (E.D. Va. 2016) (citation omitted) (emphasis original).

To show a violation under this section, a plaintiff must show that: "(1) a CRA furnished a consumer report for employment purposes compiled from public records containing adverse information; (2) the CRA failed to maintain strict procedures designed to insure that the information in that report was complete and up to date;[8] and (3) the consumer report was either incomplete or not up to date." *Id.* (citing *Farmer*, 285 F.R.D. at 700). The few courts that have had occasion to interpret this section have agreed that "[t]he logical starting point for an analysis of Section 1681k is whether the information provided was complete and up to date. If this is so, then

---

[7] On July 22, 2025, "sometime around noon CT," Taylor provided the Report to TCB for the first time. Taylor Decl., ¶ 17; *see also* Dkt. No. 120-6 at 21 (Defendants' response to Plaintiff's Interrogatory No. 7). On July 22, 2025, at 12:49 p.m., Taylor contacted Plaintiff via email, informing him that she was conducting a background check of him on behalf of TCB. Taylor Decl., ¶ 18. However, TCB provided the Report to Plaintiff on July 22 or July 23, Dkt. No. 120-6 at 21 (Defendants' response to Plaintiff's Interrogatory No. 7), and after TCB received the Report. Dkt. No. 120-6 at 11-12 (Defendants' responses to RFAs 15, 19).

[8] The term "strict procedures" has not been defined by the FCRA but requires more than "reasonable procedures." *See Henderson v. Corelogic Nat'l Background Data, L.L.C.*, 178 F. Supp. 3d 320, 336 (E.D. Va. 2016).

an inquiry into the specific procedures is unnecessary." *Id.* (quoting *Obabueki v. Int'l Bus. Mach. Corp.*, 145 F.Supp.2d 371, 396 (S.D.N.Y.2001)). Therefore, "absent a showing that the information obtained by [a defendant CRA] was inaccurate or incomplete... [a] plaintiff's claim under § 1681k must fail [.]" *Id.* (quoting *Haro v. Shilo Inn*, Civ. No. 08-6306-AA, 2009 WL 2252105, at *3 (D. Ore. July 27, 2009)).

It is unclear if Plaintiff has shown a fact issue as to the third element—whether the July 22 Report contained "complete and up to date" information regarding his criminal history. Section 1681k(a)(2) provides that "items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported." *Henderson*, 178 F. Supp. 3d at 334 (quoting 15 U.S.C. § 1681k(a)(2)). The FTC has "explained that reporting the 'current public record status' of an item means including all the latest developments in a case: 'For example, if the [credit reporting agency] reports an indictment, it must also report any dismissal or acquittal available on the public record as of the date of the report. Similarly, if the [credit reporting agency] reports a conviction, it must also report a reversal that has occurred on appeal.'" *Meuse v. Nat'l P.I. Servs., L.L.C.*, No. 21-cv-11533 (ADB), 2022 WL 2532831, 2022 U.S. Dist. LEXIS 119572, at *15-16 (D. Mass. July 7, 2022) (quoting *FTC, Div. of Fin. Practices, Fair Credit Reporting Act Staff Opinion Letter*, 1999 WL 33932137, at *1).

ERG obtained and reported the current public record status available regarding Plaintiff's Harassment Conviction. There was no public record reporting a reversal (or vacatur) of that conviction that had occurred on appeal—indeed, the appeal apparently never took place and referenced the dismissed stalking charge rather than the Harassment Conviction. Thus, Defendants plainly did not violate § 1681k(a)(2) by merely reporting a conviction. But it remains unclear

whether there was a violation by failing to note an unfinished appeal (even if that note only indicated it is unclear what happened on appeal).

Regardless, even if there were a fact issue as to the third element, Plaintiff has not identified sufficient evidence to show ERG failed to "maintain strict procedures" designed to insure that the information in the Report was complete and up to date, the second element.

The evidence relevant to this element all comes from ERG: ERG maintains reasonable procedures to ensure maximum possible accuracy, prevent mixed files and correct false data in connection with its preparation of employment screening reports. Taylor Decl., ¶ 6; *see also* Dkt. No. 112 (sealed portions of ERG policies and training material). Specifically, ERG's procedures address ensuring that criminal records databases that ERG consults are complete and up-to-date (Dkt. No. 112-1 at ES-277 to ES-286); quality control and analysis (*id.* at ES-287 to ES-297); documentation of information used to identify each consumer about whom consumer information is provided (*id*. at ES-299 to ES-301); assuring maximum possible accuracy when determining the identity of a consumer (*id.* at ES-302 to ES-303); handling disputes (*id.* at ES-304 to ES-312); and processing consumer requests for all information on a consumer's file (*id.* at ES-313 to ES-316). Taylor Decl., ¶ 7. In addition, ERG maintains training and procedures for its employees as to what constitutes a dispute in the context of a consumer background investigation (Dkt. No. 112-1 at ES-317 to ES-320) and required responses to disputes (*id.* at ES-321 to ES-323). Taylor Decl., ¶ 8. Further, ERG provides extensive training to its employees concerning the preparation of employment screening reports, addressing the interpretation of court records, ensuring proper identification of subjects of reports, detecting identity theft, verification of information concerning subjects of reports, contacting the subjects of reports to obtain or verify information, the proper use of criminal records in the hiring process and FCRA compliance in general. Taylor Decl., ¶ 9

(citing Dkt. No. 112-2 at ES-324 to ES-424 and Dkt. No. 112-3 at ES-425 to ES-524). ERG employees, including Taylor, abide by the ERG procedures. *Id.*, ¶ 10.

Despite an extended discovery period and numerous discovery rulings in his favor, Plaintiff has failed to identify evidence to the contrary. That is, Plaintiff has failed to present sufficient evidence that ERG failed to maintain strict procedures designed to insure that the information in that Report was complete and up to date. *Hayes v. Locke Supply Co.*, 724 F. Supp. 3d 609, 612 (E.D. Tex. 2024) ("Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires 'significant probative evidence' from the nonmovant to dismiss a request for summary judgment"). Therefore, Plaintiff has not sufficiently shown a violation of § 1681k(a). The undersigned recommends summary judgment be granted as to Count III.

### C. Plaintiff's claim for willfulness and punitive damages (Count IX against all Defendants) fails

Plaintiff's claims for willfulness and punitive damages under § 1681n(a) (Count IX) necessarily fail because there is no violation of §§ 1681e(b), 1681i, or 1681k(a). Further, to prove that a violation of the FCRA was willful, Plaintiff would have also shown that the consumer reporting agency "willfully fail[ed] to comply with any requirement imposed" by the FCRA. *See Ramirez v. Experian Info. Sols., Inc.*, No. 4:25-CV-00443-P, 2026 WL 833868, at *10 (N.D. Tex. Mar. 26, 2026) (citing 15 U.S.C. § 1681n(a)). Under Fifth Circuit law, damages for willfulness are appropriate only on evidence of "willful misrepresentations or concealments" beyond mere negligence. *Id.* at *4 (quoting *Stevenson v. TRW Inc.*, 987 F.2d 288, 293 (5th Cir. 1993); also citing *Cousin v. Trans Union Corp.*, 246 F.3d 359, 374 (5th Cir. 2001)). In addition to failing to show inaccuracy, Plaintiff has presented no evidence that Defendants acted with "willful misrepresentations or concealments."

**D. Plaintiff's state-law claims for defamation (Count IV against all Defendants) and negligence/gross negligence (Count VI against ERG) fail because Plaintiff has not identified sufficient evidence to show Defendants knew the relevant information was false or acted with reckless disregard to whether it was false**

In Count IV, Plaintiff alleges defamation (malice/reckless disregard) against Defendants. Dkt. No 50, ¶¶ 80-86 (alleging, among other things, that Defendants published and/or republished false statements of fact concerning Plaintiff to TCB, including false or misleading statements regarding Plaintiff's criminal history, the status of the New Mexico matter, and identifying information associated with Plaintiff). In Count VI, Plaintiff alleges, in the alternative, negligence and gross negligence claims against ERG. *Id.*, ¶¶ 91-94. As explained below, Defendants are entitled to summary judgment on these state-law claims because Plaintiff has not identified sufficient evidence of the necessary malice or willful intent to prevent preemption.

The FCRA preempts state law defamation or negligent reporting claims unless the plaintiff consumer proves "malice or willful intent to injure" him. *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 638 (5th Cir. 2002) (quoting 15 U.S.C. § 1681h(e)). Although the FCRA does not define "malice," the Fifth Circuit applies the common-law standard. *Hurt v. Ampcus, Inc.*, No. 4:25-CV-00862-SDJ-BD, 2026 WL 1999241, *12 (E.D. Tex. July 8, 2026), *report and recommendation adopted*, 2026 WL 2088973 (E.D. Tex. July 17, 2026) (citations omitted). That standard requires a plaintiff raising a defamation claim to plead "[a] statement ... made with knowledge that it was false or with reckless disregard of whether it was false." *Id.* (citation omitted). "To show 'reckless disregard,'" the plaintiff "must present 'sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.'" *Id.* (quoting *Morris v. Equifax Info. Servs., L.L.C.*, 457 F.3d 460, 471 (5th Cir. 2006) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968))).

The undersigned previously found that Plaintiff has not identified sufficient evidence of willful or malicious intent. Plaintiff argues the "evidence of the docket, pending appeal, stay, dispute information, and ERG's continued reporting creates a disputed fact question" from which a factfinder may conclude that ERG acted with knowledge or reckless disregard of the Report's misleading and incomplete presentation. Dkt. No. 120 at 13-14, 20-21. But instead of addressing malice or intent, that evidence concerns the underlying issues of whether the initial Report inaccurately reported Plaintiff's criminal history and the adequacy of ERG's reinvestigation. Mere "[n]egligence, lack of investigation, or failure to act as a reasonably prudent person are insufficient to show actual malice." *Hurt*, 2026 WL 1999241, at *12 (quoting *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 313 (5th Cir. 1995)). This evidence, viewed in the light most favorable to Plaintiff, does not support an inference that Defendants reported the Harassment Conviction with malice or willful intent toward him. Plaintiff has not presented evidence from which a reasonable factfinder could conclude Defendants reported the conviction knowing it was false or that Defendants in fact entertained serious doubts as to the truth of his publication.

Plaintiff's defamation and negligence/gross negligence state-law claims are preempted by the FCRA and must be dismissed. *Siantou v. Experian Info. Sols., Inc.*, No. A-24-CV-1130-RP, 2025 WL 4076502, at *9 (W.D. Tex. Dec. 15, 2025), *report and recommendation adopted*, 2026 WL 165886 (W.D. Tex. Jan. 20, 2026). The undersigned recommends summary judgment be granted as to Counts IV and VI.

### E. Plaintiff's state-law claim for tortious interference (Count V against ERG and Taylor) fails

In Count V, Plaintiff alleges that ERG and Taylor's FCRA violations and defaming communications tortiously interfered with Plaintiff's prospective business relations (*i.e.*, his employment) with TCB. Dkt. No. 50, ¶¶ 87-90. To prevail on a claim for tortious interference with

prospective business relations, Plaintiff must establish five elements: (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur because of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).

By finding there is insufficient evidence to show a FCRA violation or that Defendants reported the Harassment Conviction with malice or willful intent toward Plaintiff, Plaintiff's claim for tortious interference fails because he does not otherwise argue or show evidence of independent unlawful or tortious conduct, as required by the third element. *Loco Brands, L.L.C. v. Butler Am., L.L.C.*, No. 6:18-CV-69-JDK-KNM, 2020 WL 809284, at *6 (E.D. Tex. Jan. 30, 2020) (Texas law requires that a plaintiff 'prove that the defendant's conduct was independently tortious or wrongful' to recover for tortious interference with prospective business relations."), *report and recommendation adopted*, 2020 WL 805570 (E.D. Tex. Feb. 18, 2020).

Plaintiff also fails to present sufficient evidence to create a genuine issue of material fact regarding the second required element, *i.e.*, that ERG or Taylor had a conscious desire to prevent Plaintiff's relationship with TCB from occurring, or that they knew the interference was certain or substantially certain to occur because of the conduct. Plaintiff cites several pieces of evidence he claims create genuine issues of material fact which preclude summary judgment. Dkt. No. 120 at 2-4, 8, 21 (citing Weber Decl., ¶¶ 4–9; Dkt. No. 32-1 (New Mexico Department of Public Safety's official response that it located no records responsive to Plaintiff's requested 2014–2020 arrest, warrant, or conviction search associated with the identified case numbers); Dkt. Nos. 112-1 at ES-

280, 285, 287–295, 322–323 and 112-2 at ES-333–337 (ERG's procedures stating that potentially adverse public-record information generally is not reported from incomplete databases or other sources unless verified with the official jurisdiction or venue; that completed reports receive final review for correctness, accuracy, and completeness before client release; and that dispute procedures require specified documentation, investigation, determination, and notice records); Dkt. No. 111-8 at ES 001-038; Dkt. No. 111-9 at ES 039–069; Dkt. No. 105-4 (TCB000100) (internal TCB Offer Approval); Dkt. No. 105-5 (TCB 000002–000004) (internal TCB HR emails); De Belle Dep. at 21:24–22:7, 35:5–36:6)). According to Plaintiff's declaration, because he had no direct communications with TCB during the screening process, any information TCB received about his dispute—or his alleged conduct during that process—would have come through Defendants. Hurt Decl., ¶¶ 16, 18. But none of these materials supports a reasonable inference that ECG or Taylor—or any other ERG personnel—"knew" that "interference" was certain or substantially certain.

At most, the evidence shows that TCB contacted ERG to conduct a background check on Plaintiff, ERG reported a harassment conviction without fully understanding the nature or result of the appeal, and shortly thereafter, ERG notified TCB the conviction was disputed and still in investigation. Upon further investigation, ERG removed the harassment conviction when it could not determine the effect of the appeal. On similar facts, a Texas appellate court held that the appellees, in wrongly reporting to the appellant's employer during a background check that the appellant previously had a positive alcohol test result, were at most negligent and therefore not liable for tortious interference. *Escalona v. MC Charter, L.L.C.*, No. 14-17-01008-CV, 2019 WL 3489770, at *1, 6 (Tex. App.—Houston (14th Dist.) Aug. 1, 2019) (concluding a wrong response in a background check did not create a genuine issue of material fact that appellees interfered with

the appellant's probationary employment contract "by intentionally providing a false answer"). Similarly here, Plaintiff does not point out summary judgment evidence raising a genuine issue of fact as to the essential element that Defendants acted with a conscious desire to prevent Plaintiff's relationship with TCB or otherwise knew its actions were substantially certain to prevent that relationship.

In conclusion, Plaintiff has failed to present sufficient evidence to create a genuine issue of material fact as to at least two elements of tortious interference with prospective business relations. Therefore, the undersigned recommends summary judgment be granted as to Count V.

**F. Plaintiff's claims for declaratory or equitable relief (Count VII against all Defendants) fail**

Defendants next assert Plaintiff lacks standing to seek declaratory or equitable relief. Dkt. No. 111 at 20-21. Plaintiff's only response is to request the Court defer the issue pending resolution of Plaintiff's Rule 56(d) request. Dkt. No. 120 at 21. As explained below, such request is denied.

The Fifth Circuit has unequivocally held that private litigants may not seek injunctive relief against consumer reporting agencies under the FCRA. *Washington v. CSC Credit Services*, 199 F.3d 263, 268 (5th Cir.2000) ("We hold that the affirmative grant of power to the FTC to pursue injunctive relief, coupled with the absence of a similar grant to private litigants when they are expressly granted the right to obtain damages and other relief, persuasively demonstrates that Congress vested the power to obtain injunctive relief solely with the FTC."). Private litigants seeking to bring an action under the FCRA are limited to the remedies provided them in sections 1681n and 1681o, which include statutory, actual, and punitive damages, including attorney's fees. *McDonald v. Equifax, Inc.*, No. CIV.A.3;08-CV-0547-B, 2008 WL 5156690, at *2 (N.D. Tex. Dec. 8, 2008) (citing *Poulson v. Trans Union, L.L.C.*, 370 F. Supp. 2d 592, 593 (E.D. Tex. 2005) (citing 15 U.S.C. §§ 1681n, 1681o)). Conspicuously absent is the availability of injunctive or

equitable relief. *Poulson*, 370 F. Supp. 2d at 593; *see also Schoch v. Wells Fargo Home Mortg.*, No. 4:16-CV-619-ALM-CAN, 2017 WL 2385626, at *4 (E.D. Tex. Apr. 11, 2017), *report and recommendation adopted*, 2017 WL 2312079 (E.D. Tex. May 26, 2017) (citations omitted).

Accordingly, the undersigned recommends Defendants' motion for summary judgment regarding Plaintiff's demand for declaratory or equitable relief (Count VII) be granted.

* * *

In response to Defendants' motion, Plaintiff requests, in the alternative, that the Court defer consideration pursuant to Federal Rule of Civil Procedure 56(d) and permit "the narrowly tailored discovery" identified in Plaintiff's declaration and Exhibit A to his response. Dkt. No. 120 at 21-22. According to Plaintiff, resolution of Defendants' motion depends on multiple factual issues that the Court cannot resolved in Defendants' favor on the record.

Pursuant to Rule 56(d), a district court may defer or deny a summary judgment motion, or allow additional time for discovery, if a "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." FED. R. CIV. P. 56(d). Plaintiff must "show (1) why [he] needs additional discovery and (2) how that discovery will create a genuine issue of material fact." *January v. City of Huntsville*, 74 F.4th 646, 651 (5th Cir. 2023) (quoting *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001)). It's not enough to "simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *Id.* (citation omitted). Instead, he "must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Id*. (citation omitted). He "must also have diligently pursued discovery." *Id.* (citation omitted).

Plaintiff has not diligently pursued the requested discovery. On July 1, 2026, the undersigned conducted an extensive telephone conference to discuss the status of discovery. During the status conference, Plaintiff brought up outstanding discovery concerns that he had. Several of Plaintiff's requests were granted. For other disputes, the undersigned instructed Plaintiff to schedule a meet-and-confer with Defendants' counsel to provide a list of those alleged deficiencies. To accommodate Plaintiff, Defendants were ordered to be ready and available on July 3, despite the holiday weekend. Plaintiff failed to attend the scheduled conference. Plaintiff has failed to show the requisite diligence.[9]

Additionally, for most of the requested discovery, Plaintiff fails to show how the information, if it exists, would create a genuine issue of material fact. Most of the requests would only be relevant if Defendants had an obligation to resolve the legal effect of Plaintiff's unfinished appeal. Because they do not have that obligation, that information would not affect this Recommendation. Plaintiff's alternative request pursuant to Rule 56(d) is denied.

## V. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff's motion for partial summary judgment cites Federal Rule of Civil Procedure 56(a) but does not identify any claim, defense, or a part of either for which he seeks summary judgment. Dkt. No. 100. Rather, the focus of Plaintiff's motion is on Federal Rule of Civil Procedure 56(g). According to Plaintiff, Rule 56(g) findings would materially narrow the case and

---

[9] This is not the first time the undersigned has found Plaintiff did not diligently and timely pursue discovery. On July 22, 2026, the undersigned denied Plaintiff's request to reschedule depositions that he failed to coordinate with Defendants during discovery. Dkt. No. 107 (finding that "Mr. Hurt's refusal to cooperate with Defendants' counsel during discovery is antithetical to the diligence required under Rule 16"). Nevertheless, in that Order, Defendants were ordered, to the extent they had not already done so, to produce to Plaintiff all responsive documents sought in Plaintiff's motion. *Id.* at 3. At the September 1 hearing, Defendants' counsel represented there is nothing that was ordered to be produced which has not been produced.

establish the basic chronology of the Report. As narrowed in his reply (Dkt. No. 126), Plaintiff asks that the Court deem nine alleged facts to be established.

Rule 56(g) states that "[i]f the court does not grant all the relief requested by the motion [for summary judgment], it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case." *Fed. Trade Comm'n v. ZAAPPAAZ, L.L.C.*, 140 F.4th 675, 680 (5th Cir. 2025). Rule 56(g) is "ancillary" to the ultimate summary-judgment analysis, operating to "salvage some results" from the time and resources spent in deciding unsuccessful summary-judgment motions. *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 415 (7th Cir. 2019) (citing Wright & Miller, 10B Fed. Prac. & Proc. § 2737 (4th ed. 2018)).

Here, the undersigned recommends summary judgment be granted to Defendants on all eight counts. Therefore, there is no reason to consider—pursuant to Rule 56(g)—whether there are material facts not genuinely in dispute that will be treated "as established in the case." The undersigned recommends Plaintiff's motion be denied.

## VI. RECOMMENDATION

Based on the foregoing, it is

**RECOMMENDED** that Plaintiff's Updated Motion for Partial Summary Judgment or, in the Alternative, Rule 56(g) Findings (Dkt. No. 100) be **DENIED**. It is further

**RECOMMENDED** that Defendants' Motion for Summary Judgment (Dkt. No. 111) be **GRANTED** and that Plaintiff's above case be **DISMISSED WITH PREJUDICE**.

### Objections

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate

judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

SIGNED this the 24th day of September, 2026.

J. Boone Baxter
UNITED STATES MAGISTRATE JUDGE